

A Professional Corporation
ATTORNEYS AT LAW

515 SOUTH FIGUEROA STREET, SUITE 1750
LOS ANGELES, CALIFORNIA 90071-3334
T. 213.622.4222 • F. 213.689.1944
WWW.BLECHERCOLLINS.COM

MBLECHER@BLECHERCOLLINS.COM

September 26, 2014

The Honorable Denise L. Cote
United States District Judge
Daniel P. Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

   Re: Diesel eBooks, LLC v. Apple Inc. et al., Case No. 14 Civ. 1768 (DLC)
     <u>Abbey House Media, Inc. v. Apple Inc. et al., Case No. 14 Civ. 2000 (DLC)</u>

Dear Judge Cote:

  Plaintiffs Diesel eBooks, LLC ("Diesel") and Abbey House Media, Inc. d/b/a BooksOnBoard ("BooksOnBoard") (collectively "Plaintiffs") submit this brief to address whether under U.S. antitrust laws damages can be claimed for lost foreign sales. (Dkt. 71.) For the reasons below, should they ultimately choose to pursue a lost-profit theory of damages—as opposed to, or as an alternative to, a loss of going-concern value—Plaintiffs should not be foreclosed from including lost foreign sales in this analysis.

  At the outset, the cases here are sufficiently distinct from *DNAML Pty, Ltd. v. Apple Inc.*, No. 13 Civ. 6516 (DLC), 2014 WL 2535113 (S.D.N.Y. June 5, 2014) such that this Court's opinion in that case—as it pertains to lost foreign sales—does not control here. The Second Circuit recently held that "the FTAIA generally excludes wholly foreign conduct from the reach of the Sherman Act." *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co.*, 733 F.3d 395, 413 (2d Cir. 2014). Other courts have noted similarly, drawing the distinction between conduct "with" foreign nations and conduct "between or among" foreign nations. *Crompton Corp. v. Clariant Corp.*, 220 F. Supp. 3d 569, 571-72 (M.D. La. 2002). That was the case in *DNAML*, where this Court held that an *Australian* company could not recover under U.S. antitrust laws its lost sales to consumers in countries other than the United States. That is not the case here.

  The calculus changes when domestic actors and domestic conduct are at issue. By its own terms, Section 1 provides that "Every . . . conspiracy, in restraint of trade or commerce among the several States, *or with foreign nations*, is declared to be illegal." 15 U.S.C. § 1 (emphasis added). Under the Foreign Trade Antitrust Improvements Act (FTAIA), export commerce is within the Sherman Act's ambit when that conduct has a "direct, substantial, and reasonably foreseeable effect" on domestic commerce and that conduct also violates another provision of the Sherman Act. 15 U.S.C. § 6a. Those conditions are incontrovertibly satisfied here: the conspiracy originated in the United States, had pernicious effects in the United States, and from there, snowballed into international markets. In short, Defendants applied the architecture established in the U.S. conspiracy to other international markets, and Plaintiffs properly seek remuneration for lost sales in these corrupted markets.



**Blecher Collins Pepperman & Joye**
A Professional Corporation
ATTORNEYS AT LAW

The Honorable Denise L. Cote
September 26, 2014
Page 2


      This Court has already held that the conspiracy at issue here was intended to "eliminat[e] retail price competition and rais[e] the prices for trade e-books." *U.S. v. Apple*, 952 F. Supp. 2d 638, 686 (S.D.N.Y. 2013). And the conspiracy accomplished this goal because it "destroyed" competition in the e-book market in the United States. *Apple*, 952 F. Supp. 2d at 694. Given this finding, it is untenable to argue that the conduct did not have a "direct, substantial, and reasonably foreseeable effect" on domestic commerce, especially in view of the Second Circuit's adoption of a "less stringent approach" to this element of the FTAIA. *Lotes*, 753 F.3d at 410. The Ninth Circuit, recently confronted with a comparable worldwide conspiracy, held that the FTAIA did not bar a lawsuit where "[t]he indictment charged a violation of § 1 of the Sherman Act and alleged that the defendants entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing the prices of thin-film transistor liquid crystal display panels (TFT-LCD) in the United States and elsewhere." *U.S. v. Hui Hsiung*, 758 F.3d 1074, 1089 (9th Cir. 2014); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2014 WL 4652126, at *2 (N.D. Cal. Sept. 18, 2014). Other courts have similarly denied motions to dismiss based on the FTAIA where the plaintiff "alleged both foreign and domestic injury." *Crompton*, 220 F. Supp. 2d at 572; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 962 (N.D. Cal. 2011) ("Unlike *Empagran I*, Dell is not a foreign company alleging injury based on wholly foreign transactions and conduct. Dell is a Delaware Corporation with its principal place of business in Texas and alleges a conspiracy between defendants that involved both domestic and foreign conduct."); *Gen. Elec. Co. v. Latin American Imports, S.A.*, 187 F. Supp. 2d 749, 751-52 (W.D. Ky. 2001) (denying motion to dismiss where plaintiff alleged exclusion from market and conduct aimed at destroying competition ).

      This case presents the proper mix of domestic and foreign conduct such that Plaintiffs may recover for lost foreign sales. This conspiracy originated in the United States and was meant to abolish price competition in the United States. Defendants did not reach a separate conspiracy when they imposed agency agreements on Plaintiffs for foreign markets. These agreements were an outgrowth of the already hatched conspiracy this Court found violated the antitrust laws. Indeed, many of the initial agreements Plaintiffs signed applied to the United States *and* Canada, and shortly after Plaintiffs signed these agreements, they were forced to sign similar agreements in other foreign territories. (Declaration of Robert LiVolsi.) Accordingly, lost sales in these foreign territories are legally cognizable damages.

      Respectfully submitted,

      /s/ *Maxwell M. Blecher*
      MAXWELL M. BLECHER

cc:    All counsel of record
60471.2